UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
03-CV-2607(JMR/FLN)

| | |
|---|---|
| Mary E. Grosenick ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| SmithKline Beecham Corp., ) | |
| d/b/a GlaxoSmithKline ) | |

Defendant seeks summary judgment. For the reasons set forth herein, defendant's motion is granted.

I. <u>Background</u>

GlaxoSmithKline ("Glaxo") employed plaintiff as a pharmaceutical sales representative from 1992 to January, 2002. During her employment, she performed her job duties in a satisfactory manner. In January, 2000, Peter Holte became plaintiff's supervisor. Their relationship was not a good one. At one point, plaintiff claimed Mr. Holte grabbed and squeezed her thigh in a sexual manner while they were in a car. In May, 2000, as a result of this claimed incident, plaintiff filed a sexual harassment complaint with Glaxo against Mr. Holte. Glaxo's Human Resources Department timely investigated the complaint and found it unsubstantiated. Plaintiff made no further complaints of a sexual nature against Mr. Holte.

Plaintiff did, however, complain of other interactions with Mr. Holte. She claimed he failed to recommend her for promotion, treated her differently from other employees, unnecessarily reprimanded her, removed her from a key position on an important

account, failed to recommend her for a national convention team, and interfered with her application to be an account manager by denying her time off to interview. Plaintiff claims these incidents occurred before and after the sexual harassment complaint, and continued until her January, 2002, termination.

Plaintiff also had a medical problem during her employment with Glaxo. On July 26, 2001, she saw Dr. Ivance, an orthopedist, about knee pain and possible knee surgery. On July 30, 2001, she reported her medical problem to Sandy Ceretti, one of Glaxo's Occupational Health Services representatives, and gave her a note from Dr. Ivance which read: "Unable to work due to knee pain." Ms. Ceretti then sent plaintiff a Family and Medical Leave Act ("FMLA") approval notice and certification form for her doctor's signature, entitling plaintiff to twelve weeks of medical leave. 29 U.S.C. § 2612(a)(1). The notice informed plaintiff she would need a written physician's release before returning to work.

On August 2, 2001, plaintiff spoke to Carolyn Hariss, Glaxo's Nurse Case Manager. Ms. Grosenick discussed her knee, and complained of contacts from work during medical leave. In particular, plaintiff told Ms. Hariss she had received company mail and email while on medical leave. Ms. Hariss assured plaintiff that it was a violation of company policy for her to do any work while on medical leave.

On August 20, 2001, plaintiff again met with Dr. Ivance, at which time he completed the FMLA medical certification stating plaintiff should not work from August 20, 2001, until after her surgery. The form also stated plaintiff could work part-time from July 30 to August 20, 2001. Dr. Ivance signed additional certifications on September 19 and October 10, 2001, each stating plaintiff could not return to work.

By late August, issues arose concerning the date upon which plaintiff's FMLA leave began. Glaxo set plaintiff's start date as August 2, 2001. Twelve weeks thereafter is October 24, 2001. Plaintiff did not return to work by October 24, 2001, nor did she provide Glaxo with any notice from Dr. Ivance indicating she could return to work. Glaxo filled her position, and her replacement began working on October 25, 2001. Once her position was filled, Glaxo considered plaintiff a displaced employee, which meant she had thirty days to find a new position in the company. Plaintiff did not find a new position with Glaxo, and in late January, 2002, her employment was terminated.

Plaintiff claims she suffered two adverse employment actions while employed by Glaxo. First, she claims retaliation for the sexual harassment complaint, and second, she claims a violation of her FMLA rights. On September 25, 2002, plaintiff filed a charge with the Minnesota Department of Human Rights claiming retaliation for the sexual harassment complaint against Mr. Holte. That charge

was also filed with the Equal Employment Opportunity Commission on September 27, 2002. This case was filed on March 28, 2003.

Lastly, plaintiff claims intentional infliction of emotional distress.

II. Discussion

  A. Summary Judgment

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Liberty Lobby, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Liberty Lobby, 477 U.S. at 247-48 (emphasis in original). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

4

B. <u>Retaliation for Sexual Harassment</u>

1. <u>Statute of Limitations</u>

Plaintiff claims retaliation under Title VII and the Minnesota Human Rights Act ("MHRA"). 42 U.S.C. § 2000e-3(a); Minn. Stat. § 363A.15. Each act has a statute of limitations which bars claims commenced after a defined period. Under Title VII, an action must be filed "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The MHRA requires that a case be filed within "one year after the occurrence of the practice" in question. Minn. Stat. § 363A.28, subd. 3. A complaint must be brought within the statute of limitations, otherwise it is lost. See <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002). These time limits may be extended when there is a continuous course of conduct, <u>Hukkanen v. Int'l Union of Operating Eng'rs</u>, 3 F.3d 281, 285 (8th Cir. 1993), or in cases in which the claim is subject to equitable tolling. Neither party here claims a basis for equitable tolling.

The parties disagree on the limitations period. Plaintiff claims she was subject to constant and continual retaliation for the sexual harassment complaint, tolling the limitations period until her ultimate termination. She cites hostile work environment cases to support her claims of a continuous course of conduct, which would extend her limitations periods. <u>Hukkanen</u>, 3 F.3d at 285; <u>Breitenfeldt v. Long Prairie Packing Co., Inc.</u>, 48 F. Supp. 2d

5

1170 (D. Minn. 1999). She also claims Mr. Holte's actions created a hostile work environment culminating in her termination. She is incorrect.

Hostile work environment cases are not identical to cases involving discrete acts. Morgan, 536 U.S. at 114-15. This is because "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and are therefore immediately actionable. Id. at 115. In contrast, in a hostile work environment case, the unlawful employment practices "occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115. To determine whether a hostile work environment exists, a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 116 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Plaintiff alleges several instances of discriminatory conduct from January, 2000, to August, 2001, claiming a pattern of hostile behavior. Plaintiff states Mr. Holte failed to promote her, criticized and disciplined her, issued unnecessarily harsh reprimands, treated her unfairly, and demoted her. Assuming this to be true, plaintiff's work environment may well have been unpleasant, but an unpleasant work environment, and an unpleasant

6

supervisor, are not equivalent to a hostile work environment. <u>Scusa v. Nestle U.S.A. Co., Inc.</u>, 181 F.3d 958, 967 (8th Cir. 1999).

Virtually all of plaintiff's asserted discriminatory events are discrete acts, such as failure to promote and the demotion from an important account, and each would have been immediately actionable. Whether considered separately or aggregated, the alleged discriminatory acts do not suggest unusual severity or a threatening or humiliating environment.[1] Finding no hostile work environment here, those acts falling beyond the applicable statute of limitations in this case are time barred and no longer actionable. As a result, the Court finds as a matter of law that it may only consider actions occurring after September 25, 2001, for the MHRA; and under Title VII, only those claims occurring after December 1, 2001.

    2. <u>Adverse Employment Action</u>

The alleged retaliatory calculation of FMLA leave and plaintiff's termination are not time barred. To state a claim for retaliation, plaintiff must show she engaged in protected activity,

---

[1] For example, the Eighth Circuit Court of Appeals found a hostile work environment where defendant "repeatedly propositioned [plaintiff], tried to engage her in offensive conversation about sex, touched her breasts, and pawed between her legs. [Defendant] attempted to force himself on [plaintiff] physically and once brandished a gun in his office and threatened to rape her." <u>Hukkanen</u>, 3 F.3d at 285. Even crediting each and all of plaintiff's alleged wrongs, this is not the kind of case described in <u>Hukkanen</u>.

that she suffered an adverse employment action, and that a causal connection existed between the protected activity and the adverse employment action. Ferguson v. Michael Foods, Inc., 74 F. Supp. 2d 862, 871-72 (D. Minn. 1999).

The parties agree plaintiff's original sexual harassment complaint against Mr. Holte is a protected activity. And for these purposes, defendants do not dispute that termination of FMLA leave and termination of employment are adverse employment actions. The only remaining question is whether there is a causal connection between the two. Plaintiff claims one exists; defendant denies it. Defendant is correct.

Plaintiff has offered no evidence linking Mr. Holte to the termination of her leave and employment. Those decisions were made by the human resources department. And the department's decision was made more than a year after plaintiff's sexual harassment complaint against Mr. Holte was filed, showing virtually no temporal link. Ferguson, 74 F. Supp. 2d at 872 (stating that a four month gap between complaint and adverse employment action weakens the inference of retaliation); Horrocks v. Mechanical Breakdown Protection, Inc., 32 Fed. Appx. 159, 162 (8th Cir. 2002) (finding a weak temporal connection when three months elapsed between employee's complaint and the alleged retaliatory conduct) (unpublished).

Plaintiff offers a single piece of evidence to support a causal nexus: Mr. Holte hired a replacement before her leave ended. This argument fails, however, because the replacement did not begin work until after plaintiff's FMLA leave was completed. Plaintiff had not been certified by her doctor to return to work, and hiring a replacement for an employee who is not able to return to work cannot, on its own, create a causal connection. The Court finds plaintiff has failed to produce evidence from which a reasonable jury could find a causal link between the protected act and the claimed retaliation occurring more than a year later. Plaintiff's retaliation claim must therefore be dismissed.

C.   FMLA

The FMLA grants twelve weeks paid leave for a health condition which prevents an employee from performing his or her job. An employee may not take advantage of the formal requirements of notice and calculation of leave time under the FMLA to take more than the allotted twelve weeks. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002). It is, of course, possible for an employee to work part-time or take intermittent leave under the FMLA. But to do so, the employee must produce medical certification showing the necessity for such a schedule, and consult with his or her employer regarding the viability of reduced leave. 29 U.S.C. § 2612(b)(1) and 2613; 29 C.F.R. §§ 825.203 and 825.117.

9

Plaintiff claims Glaxo wrongly identified August 2, 2001, as the commencement of her FMLA leave. She further claims she continued working part-time until August 20, 2001. To support this claim, plaintiff relies on her post-departure August 20, 2001, doctor's certification stating she could work part-time from June 30 to August 20, 2001. She also relies on her own records of work performed, and correspondence with Glaxo employees regarding work. Her reliance is misplaced.

Dr. Ivance's note dated August 20 was a retroactive approval of plaintiff's ability to work part-time. On July 26, the doctor wrote that plaintiff was "[u]nable to work due to knee pain." This was the only information given to Glaxo until the August 20 note which plaintiff now claims authorizes past-work. The Court finds this later note does not, and cannot, meet the requirements for intermittent leave under the FMLA. It is of no use to the employer to find out, after the fact, that an employee could have worked. If the Court were to accept this "proof," calculation of the FMLA twelve week leave period would be impossible, forcing an employer to attempt to comply with the statute at its hazard. It would also have the perverse effect of making the employer struggle mightily against the grant of FMLA leave, lest it be subject to a back-looking claim of violating its employee's rights.

After telling her co-workers that she had received email and work related correspondence during her FMLA leave, plaintiff complained of demands being made upon her. Glaxo responded, and

10

explicitly instructed her not to work. In fact, she was told it was a violation of company policy to work while on medical leave. Despite this advice, plaintiff now claims to have a contemporaneous log of work performed while on leave. This work, of course, was not authorized by Glaxo, and any claim that this "work" tolls the FMLA twelve-week leave is unavailing. The Court finds as a matter of law that an employee cannot unilaterally initiate a working relationship with an unwilling employer. Plaintiff cannot perform unauthorized work while on leave and use this work to enlarge her FMLA time.

The parties do not dispute that Glaxo was first informed of plaintiff's medical leave on Monday, July 30, 2001. Glaxo began its count of plaintiff's leave on August 2, 2001, setting her final leave date as October 24, 2001. Glaxo never received any notice from plaintiff's doctor indicating her ability to return to work before the end of the leave period. There is nothing wrong with this calculation, or with Glaxo's conduct in this matter. Accordingly, this claim is properly dismissed on summary judgment.

    D.   <u>Intentional Infliction of Emotional Distress</u>

To state a claim for intentional infliction of emotional distress, plaintiff must show she was subjected to extreme and outrageous conduct, that the conduct was intentional or reckless, that it caused her emotional distress, and that the distress was severe. <u>Hubbard v. United Press Int'l, Inc.</u>, 330 N.W.2d 428, 438-39 (Minn. 1983). Plaintiff must allege conduct "so atrocious that

11

it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 439 (quoting Haagensen v. Nat'l Farmers Union Property and Cas. Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979)).

Plaintiff has wholly failed to sustain this burden. It is true plaintiff was required to continue working with Mr. Holte after her sexual harassment complaint, but this was only after Glaxo investigated her claims and found them unsubstantiated. Glaxo's actions were reasonable and constitute acceptable corporate behavior. There is no suggestion that Mr. Holte engaged in any unwanted physical contact after plaintiff's complaint.

Plaintiff also claims Glaxo failed to provide adequate responses to her inquiries regarding FMLA leave causing her severe emotional distress. This failure on Glaxo's part, if indeed it occurred, scarcely rises to the level of an atrocity so grave that it "passes the boundaries of human decency." Id. Plaintiff has failed, as a matter of law, to allege facts sufficient to sustain a claim for intentional infliction of emotional distress. She has certainly not alleged facts from which a reasonable jury could find intentional infliction of emotional distress.

III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted. Accordingly, this matter is dismissed with prejudice.

    IT IS SO ORDERED.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  July 22, 2005

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States Chief District Judge
